Call the next case. Case number 25-2186 from the Southern District of Iowa. Iowa Safe Schools et al. v. Kim Reynolds et al. Mr. Wesson, when you're ready. Okay. It didn't look like a lot of shaking of hands was going on. I'm sorry, I interrupted with your good sportsmanship and shaking hands. I was trying, Your Honor. I know, I saw that. Actually, I didn't see it. Judge Kobus didn't tell me. I said, doggone it, I blew that too. Not the first time. Looks like we have everybody at the table now, so you may proceed, Mr. Wesson. Thank you, Mayor. Please, the court, counsel, I've reserved five minutes for rebuttal in this case. This also arises from a challenge to parts of Senate File 496 beyond the facial injunction in the library section, which I would just request if this court addresses that it vacate as well, because we do have overlapping injunctions in the case. It challenges primarily two other parts of the law. One, what we call the parental notice section, which says that if a student requests from a licensed professional a gender identity-related accommodation, including names or pronouns, that an administrator be notified to notify a parent. The other is the instruction section, which prohibits teaching about sexuality and gender identity in K-6 classrooms outside of sex ed. Now, the district court in this case entered two partial facial injunctions against the parental notice and the instruction sections. You may think, under net choice, a partial facial injunction is an oxymoron, and you would be correct. Because the plaintiffs have chosen to bring a facial challenge to both statutes. I'll go through both in turn and explain why a facial injunction was improper and why the injunction that the district court gerrymandered after upending the net choice analysis was also improper. First, with regards to parental notice, it is common sense that parents should be well informed about what is going on in their children's lives. Judge Locher agreed that the statute could be enforced as to pronouns, despite the fact that the statute also refers to names. His carve-out for the injunction does not include names, but he says that the word accommodation is too vague and unknowable for well-educated, licensed professionals. I have more faith in them. Here, a teacher is obligated, if they receive a request for a gender identity-related accommodation, to the accommodations in the statute, which are given as an example, are names and pronouns, to notify an administrator to notify parents. And sure, there could be a question as to whether an accommodation is related to gender identity or not. And for that, a licensed professional has several choices. One, they could ask the student. Two, if they're concerned and they don't want to ask a student, they can notify an administrator to notify parents. In either of those cases, there would be no discipline. And despite the fact that the parental notice section of this law was in effect for two years, the plaintiffs have not put into the record a single example of any discipline, appropriate or inappropriate, given that a preliminary pre-enforcement sort of facial injunction was improper. As for the instruction section, the district court facially enjoined two out of the seven words in the statute. Those two words are program and promotion. The state's consistent stance in this case is that the only place that this law applies is during mandatory in-classroom instruction. The district court disagrees, but does agree at least that it applies in mandatory in-classroom instruction. So to apply the net choice analysis, first we have to look to the denominator. You can do the word count. Five out of seven of the applications were found not to be facially unconstitutional, which one would think would be more constitutional than unconstitutional sweep. One could look at the time in a classroom. This law applies during the school day for K-6 students all the time. And even if a club meets once a week or every day after school, the vast majority of the applications of this law, which prohibits talking about sexuality or gender identity, would be appropriate as compared to the unconstitutional applications. Instead, the district court issued an injunction as to part of the law, which is not what the plaintiffs asked for. I'd also like to note that when it comes to both of these sections of law, they've both largely been in effect because of this court's earlier vacater or the earlier decision by the district court that there was no standing to challenge the parental notice section. The state respectfully asks this court to vacate these partial injunctions again and allow the law to go into effect to the extent that there was any doubt about the viability of the district court's analysis as to mandatory classroom instruction. That has been resolved by Walls v. Sanders. And so the mine run of applications must be constitutional. And even if there are potentially some unconstitutional applications, those could be ripe for an as-applied challenge. As for some of the question about whether accommodation is unknowable, I'd like to point the court to 280.334, Iowa Code 280.33 subsection 4, which talks about, for example, a bathroom-related accommodation for students that want to use a single-use bathroom. Under Iowa law, independently, one student cannot use a bathroom not consonant with birth sex, but they can ask for bathroom-related accommodations. There's no definition of accommodation in that section. That law is currently in effect. Or 280.13c, about accommodating a student with a concussion. Again, there is no definition of accommodation in the statute, yet educators are expected to understand that formal or informal accommodation may be necessary for a student following a concussion. Here, there is no basis to facially enjoin a law intended to make teachers let parents know about important things that are going on in their lives. My friends on the other side raise a series of hypotheticals as a parade of horribles. For example, a female student perhaps asking or using a chest binder. Now, if they're just using a chest binder and don't ask anything of the teacher, it doesn't seem like they have asked an educator for a gender-related accommodation. But let's stipulate that the student either asks a teacher where to buy a chest binder or how to put one on properly. I would posit under the law that teacher, out of an abundance of caution, should notify an administrator to notify parents, and that that doesn't violate anyone's constitutional rights to do so. And if the state, at some point, begins arbitrarily or capriciously enforcing the statute in a way that's unfair to licensed professionals, at that point, it would be appropriate to bring an as-applied challenge. As for the instruction section, there's been a lot of back and forth about GSAs, these clubs that apparently are going on in elementary schools, about gender and sexuality. I believe when I was in high school, our GSA was called a Gay-Straight Alliance. It is the state's position that after-school clubs that are not part of the mandatory instructional time are not covered by the law at all. The district court disagrees with us, but even if this court agrees that that subset of applications is unconstitutional, given that there's a facial challenge to the law, that is not enough to override the rest of the law, and a facial relief is improper. I'd also like to point to the docket 141 at page 4, where the district court talks about what his injunction does. The first part reiterates the prohibition on instruction. That's what the law says. This court has repeatedly said, whether in Cessna or against Davenport or Jake's Limited, that follow or obey the law injunctions are not necessary. Well, his first part of what his injunction does explains that schools must follow the law. The second part talks about that neutral references to sexuality or gender identity or sex or gender identity must be allowed, which is the state's position. Again, that is a follow-the-law, obey-the-law injunctive term. The third one mandates that all K-6 students must be allowed to attend a GSA. I imagine some elementary schools don't have a GSA. Some schools might require a teacher advisor. I know when I was in Young Republicans in high school, I couldn't find one, and so I wasn't allowed to have a Young Republicans club until I did. What is the status of this injunction, which mandates that all K-6 students have access to a GSA, mean? If a school requires all clubs to have a teacher advisor and no teacher is willing to advise the club, is that a constitutional violation? Does that violate the state violating someone's constitutional rights? And fourth, he talks about the right to advertise GSAs. Your Honor, what a school's policy about advertising clubs is may or may not be subject to a constitutional challenge, but this is an injunction entered against the state of Iowa for enforcing a law that, according to the state of Iowa, doesn't apply to clubs at all. Rather than force the state and schools to walk a tightrope to comply with a highly specific injunction, most of which seems to be aimed at asking people to follow the law, we respectfully ask this court to vacate the injunctions and remand, hopefully with enough analysis, that the district court, who described this court's earlier analysis as atextual and a worse reading than his initial reading, will have the guidance to ensure that we aren't here again in another year with a third preliminary facial partial injunction against this case. I'm happy to take any questions or to save my time for rebuttal. Seeing no questions, you may reserve the remainder of your time. Thank you. Mr. Storey. Thank you, Your Honors. May it please the court, Thomas Storey here on behalf of the plaintiffs and Iowa Safe Schools. Your Honor, the prior panel sent this case back to the district court with the basic instruction to do some more work. And that's what the district court did. It picked the statute apart. It exhausted canons of statutory interpretation, generously so, I might say, towards the state proffered interpretation. And it weighed all reasonable applications of the statute for their constitutionality. It did all this, but then had to conclude, it's unavoidable that there are certain aspects of this law that are just unconstitutional, that cannot withstand the scrutiny that they've been asked for. I don't remember if it's in your brief, but the state points out that this is a little bit odd in that it's a facial injunction for only part of a statute. Forgive me if it's in your brief, but is that commonplace? And if so, where do I look to find an example of that occurring? I don't have an example off the top of your head, but what it reminds me of is the last time I was up here. And Judge Loken was on the panel, and he was asking everybody about Broderick. Broderick, which I confess, I didn't know what that case was. But I read that now, and I see that it talks about laws infringing on the First Amendment cannot withstand unless a narrowing construction or a limiting injunction removes the threat to the Constitution. That's what the district court did. I get the narrow, and I don't have the benefit of Judge Loken having Broderick in front of my mind like you didn't the first time. But I get the interpreting the statute to avoid constitutional issues. That makes complete sense to me. It's a different thing, isn't it, to say that on a facial challenge we're going to pick and choose parts of the statute to enjoin, especially when you're doing a net choice sort of analysis? No, Your Honor, not necessarily, because Iowa law has Iowa Code Section 4.12, which is the severance statute. It's the same statute that the state has advanced should be applied, and it argues for it. There's the American dog owners case from the Iowa Supreme Court that could be referenced for support for that. District court referenced it as well. In that statute, it was an ordinance. It was a pit bull type thing. They described various categories of dogs that couldn't be or had some extra restrictions, and some categories made sense. Other categories didn't, and the court said, we are going to sever out those ones that are vague. We're going to sever out those categories, leave the remainder intact, because that's what the legislature wants us to do. The legislature doesn't just permit severance, permit this sort of partial invalidation. It's enthusiastic about it. It'd rather have everything that it can. I think about the instruction section in particular. The state has stood up here and has always, as it said, taken the position, and I don't disagree with that, that that's their position, that the law only applies to mandatory curriculum. But it doesn't. But what does the injunction do? It prohibits them from applying and enforcing law against extracurricular activities. Whether or not they agree with the interpretation of the statute, the practical effect is that they're left with a law that they can enforce exactly how they say they've intended it to be enforced. I kind of ask, what are we doing here? Well, you know, and I get that because, you know, there is some attraction to it. But, of course, what they're saying is that, well, if that's all it is, it's a follow-the-law injunction. But I assume that you have a rebuttal to that, that there is something more at stake here, that there was some additional factual confusion or other information that would say this is broader than merely just please follow the law, right? I do, Your Honor, yes. The follow-the-law injunctions, the obey-the-law injunctions, I went and pulled up the cases where that phrase is used. And specifically, oh, I don't have the site in front of me, but it's either from this court or the Southern District of Iowa. It's the one that's quoting in the parenthetical of where they cite that. It clarifies, when we say obey-the-law instructions are prohibited, what we're saying is that an injunction needs to be specific as to what is being prohibited, right? In that case that they cite, it was like a parolee requesting that the state give him information when it comes up. It's like, well, the state was already going to give you information. That's different here because we have a voluminous record about what's going on on the ground. Schools do not share the state's interpretation of the statute and the state's interpretation that has not been uttered. Why isn't that appropriate for an as-applied challenge then? Because the state has not narrowed that interpretation, professed it out through a Department of Education guidance. Right, but that would be the basis for an as-applied challenge, right? In other words, a school district could trigger that action on behalf of the state. Or am I misreading the record? The school district is taking the actions that it's taking because of the vagueness. To the extent that it's vague or not, I assert directly targeting programs and extracurricular programs and promotions. It's facial because that's what the law is designed to target. This court has said multiple times in recent memory that it cannot rewrite the statute that the state puts in front of it. And the state put in front of it a statute that says not just curriculum. It says programs, promotions, curriculum, test, survey, questionnaire, instruction. I'm probably forgetting one. Multiple terms. The statutory interpretation canon that they fail to rely on is surplusage. Each one of those terms has to mean something. If the Iowa legislature meant to only restrict mandatory curriculum, then it would have stopped at curriculum. It didn't. So the district court did the thing. He did the statutory interpretation and had to conclude that programs and promotions only have independent meaning when they relate to extracurricular activities. A facial challenge against a law that unconstitutionally restricts extracurricular activities is entirely appropriate. You mentioned the Moody v. Nutt choice and Wayne. And that kind of gets me to the second step. We've been talking about interpretation. That's the first step. Let's go to the second step, the constitutionality. The state doesn't defend this step. I've seen a footnote. I've heard maybe a mention that, well, after Walls, we don't know. They never say that it would be constitutional for us to restrict GSAs because of what they profess, because they cannot. After this injunction was entered, that became eminently more clear as the Iowa legislature amended the statute. Now, all parties agree it's not relevant to the injunction that's in place now. But it is relevant in that it reinforces that second step, that it is not viewpoint neutral. I do want to respond to the state's third step argument, which is weighing the statute, weighing the applications. I understand the general thrust is that you should be weighing unconstitutional applications of extracurricular restrictions against constitutional applications of curricular restrictions. That's not how Nett choice works, and that's not how this statute works. Each one of these things is essentially a subsection. It's like the American dog owner's case. So what you should not do is weigh them between each other, but weigh them amongst each other. And with respect to both programs and promotions, the only applications proved to be unconstitutional. I'll return briefly to the accommodation, the notification provision, and why it is vague. The state, I think the line in the brief is, even with the aid of a dictionary, we couldn't figure it out. But the dictionary definition they supply is not helpful. What is an accommodation? It's providing something for convenience. But what does that mean if you're in a school? Does it have to be something personal to the student? Does it require a change in the structure or way that you're giving things? And this is why GSAs have been impacted. Because if you make a space available to a GSA and to the students who want to join that GSA, aren't you accommodating them? Aren't you tolerating the speech that is occurring within that space? And it's also why counselors and teachers. Well, accommodation alone is tied to requests. So there's got to be a request, and then there's got to be an accommodation. And the term accommodation is something that is well known in law. Right? I mean, we know what it means as lawyers because we know what an accommodation looks like in a discrimination category. We know what an accommodation looks like for somebody who suffers from a disability. And, you know, it's not like all that body of law that talks about what's an accommodation just disappears because we're now in an education context. Because one presumes that the legislature means what the meaning is that that word ordinarily has within the context that it's used. Right? And so making space available to any club at any time, I mean, that doesn't really look like an accommodation. Now, it could be an accommodation in an individual circumstance subject to an as-applied challenge. Like a student comes in and says, I want the opportunity to have such a club, but I need a student advisor. And under those circumstances, it becomes a request for an accommodation. Right? Well, I think the problem there, Your Honor, is that the accommodation in those contexts in which we understand them and the context in which teachers understand them, the ADA, the IEDA, our declarant, Mr. Goodman, a teacher, a special education teacher, talks about this. When I hear accommodation, I think an assistive communication device. I think a paraeducator. You know, those are the examples he's used. You know, I think an elevator or a ramp or something. This law ties accommodation not to disability. Right? Not to the other things we've talked about. But it ties it to gender identity. Right? It has to be intended to affirm the gender identity. And that's where it really falls apart. Because how do you know if that accommodation, if it satisfies that step of being an accommodation, is intended to affirm? You know, the state has insisted that, well, what you should just do is ask. But now we're imposing an investigation requirement onto teachers. That's nowhere in the statute. It's just a question. It's not an investigation, is it? But how deep wants to go? What if the student says no? Well, then, I mean, I think that's the answer for the state, isn't it? Is it? Because, Your Honor, I'm afraid it's not clear from the statute. Must there be a reasonable investigation? Must they continue to kind of drill down? Must they include with that answer to the student their recollection that the student got a haircut last week or the next week? Right? You know, this is where the names example gets pretty problematic. Okay? Because it depends on both the student's background and the teacher's. So if I'm a student and I'm from one part of the world, Angel may be a masculine name. And if I'm from another part of the world, it may be a feminine name. If I'm a teacher and I haven't really been exposed to much Chinese culture, I don't know if Wong Fei is a masculine or a feminine name. And the student's intent, call me T, what does that mean? This investigation. Why aren't these as applied challenges that could be made if this parade of horribles occurs? Because this is a vagueness challenge. It's not that these teachers don't know whether this. No, go ahead. It's not that the teachers don't know whether or not this example applies. It's that they don't know what the law means. It's that it is interfering with their ability to do their job at all because they don't know what it requires. And it's causing schools to interfere with the activities of students. Vagueness is unique and uniquely designed for this reason. And that's why I'm stressing the vagueness of this so much. But to conclude it, the district court acted with some restraint here, both on the programs and promotions. And here again, leaving the pronoun example and intact. I think we can see why it did that. Pronouns are inherently related to gender in a way that names aren't necessarily or any other accommodation like sitting in on a GSA might be. And asking for a change. The request, address me by this, seems to, I guess, be an accommodation. Though it certainly is quite different from a wheelchair ramp. Before I close, since I'm running swiftly out of time, I just want to note one thing from the arguments we've just heard this morning. Because that is a piece of our case as well. And that is the visual depictions language. That is completely part of the relief we've requested. I see no reason to basis to separate out visual depictions from the remainder of the statute. Because regardless of which phrase you're using, the same test, whatever that test may be, applies. And it remains books that have been put there by schools for a reason and are now being removed. Thank you, your honors. If there's no further questions, I'll sit down. Seeing none, thank you very much. I appreciate it. Mr. Wesson. Thank you, your honor. I'll start with the fact that there is a record in this case. There are some schools that for one reason or another have eliminated GSAs. There is no evidence in the case that the school has initiated discipline against any teacher or individual or licensed professional related to GSAs. There is no indication in the record that the state or the relevant state bodies have initiated any kind of discipline relating to the improper failure to accommodate or the accommodating without notifying parents. And while, Judge Kobus, you asked, why can't you just ask the student? That's one approach. Another, if a teacher doesn't want to ask a student, is they can always just notify an administrator to notify parents. That is all the statute with regards to parental notice requires. But I would like to point out that while I think my friends fail on net choice, both because they have brought facial challenges and that's not what the district court did, they also fail on the preliminary injunction factors. Where is the irreparable harm, for example, for their parental notice section for a law that's been in place for two years and there's nothing in the record that there's been any enforcement action that is unconstitutional? That seems absolutely improper. As for the question about severability in Section 4.12, I point this court to the U.S. Supreme Court case in Brockett, which predates net choice but explains that facial injunctions are harder to win when statutes are severable. It's not because the district court should gerrymander the claims brought, but because instead, it's very difficult to prove that all applications or in the net choice context, a vast majority of applications are unconstitutional. Looking at the surplusage point raised by my friends about the seven words in that statute, one example in a mandatory classroom instructional context of what promotion could mean, for example, is if a teacher talks about the virtues of why the kindergartners should engage in heterosexual or homosexual sex. That is prohibited by the statute, or engage in all sorts of heterosexual or homosexual activities either way. And the district court agreed that that's prohibited in the classroom. And if the teacher is trying to promote that activity to people in K-6, that type of promotion is prohibited by the statute in the mandatory instruction section of SF-496. But again, even if this court disagrees that those applications would be constitutional, the proper approach, as multiple of the judges here before us have noted, is to bring an as-applied challenge. Because ultimately, the issue here is that the state's laws, whether in this case or as my friends note in the library section, are in the vast majority of instances constitutional. I'd also like to gently push back about our stance on GSAs. Our stance on GSAs is that the law doesn't affect them at all. As to whether the state could prohibit GSAs, we believe that's outside the scope of this case. As to whether the record has discussed the state prohibiting GSAs, there's no evidence of any discipline. There's no evidence of any accommodation that's been sought relating to GSAs. And my understanding, based on the description of the GSAs provided by my friends on the other side, is that gay and straight, cis and transgender individuals all participate in GSAs. So a desire to participate in such a club is not indicative of one's gender identity requiring an accommodation or a notification of a parent. But here's the thing. If a teacher is confused and is concerned that a student asking that teacher may be violating the law, the easy solution is the teacher just notifies the parent that their kindergartner through sixth grader is participating in a GSA. And that resolves any potential disciplinary issue. To the extent that there is some implied constitutional abrogation by teachers informing parents about activities their students are involved in, we would like to gently push back on that. Parents play the most vital role in their children's lives, and a law that requires teachers or administrators to notify parents about what's going on in their students' lives should be generally seen as appropriate. You know, it's been a long time since I had kids in grade school. But at the time when I had kids in grade school, every time my child wanted to join a club or engage in any extracurricular activity, somebody sent a form home with me that I had to sign off. I mean, has that just disappeared off the face of the earth? I don't know, Your Honor, but I don't believe that that form was a constitutional violation. I'd also like to point to one last issue. My friends on the other side talked about, you know, the challenge to the statute. If you look at their complaint. Did we lose Judge Smith? No, he's right there. We lost him. Oh, all right. Sorry, Chief. You're still with us. If you look at the amended complaint, there are, I believe, eight different causes of action with various subsections going through all types of permutations of First Amendment, vagueness, equal protection, federal statutory challenges to this law. What you won't find is a challenge to two of the seven words in the instruction section. And the reason that we think that that probably isn't there is because under net choice, which requires balancing as defining the denominator in a facial challenge the whole law, the constitutional against the unconstitutional applications, even if there are some unconstitutional applications, the facial challenge must fail. We respectfully ask this court in enforcing that choice because as the recipient of many facial injunction requests, the state believes that that is an important precedent that this court has already recognized. Thank you. Thank you. The case will be taken under advisement. It is submitted. I want to thank the parties for their briefing and arguments. It's been very helpful. Hopefully, we'll be able to write something that puts an end to this. So the next time we see this case, it will be at least not in a preliminary context. Thank you very much.